IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**CRAIG DAVIS,**<br>    **Defendant.** | **Case No.: 1:24CR-40** |

**DEFENDANT'S POSITION ON SENTENCING FACTORS**

  Pursuant to Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.3 of the United States Sentencing Guidelines ("Guidelines"), and this Court's Policy Regarding Procedures to be Followed in Guideline Sentencing, the Defendant, Craig Davis, through counsel, states that he has received and reviewed the Presentence Investigation Report ("PSR") prepared in this case.

  On August 23, 2024, Mr. Davis entered a guilty plea to one count of Wire Fraud. On the same date, a PSR was ordered to be completed.

  The pre-sentence report calculates Mr. Davis' total offense level to be thirty (30), and a corresponding sentencing range 108-135.

  For the reasons set forth below, Mr. Davis submits that a sentence of no more than twenty-four (24) months of incarceration followed by three (3) years of supervised release is sufficient to meet the aims of sentencing.

  **I. GUIDELINE CALCULATION**

  Mr. Davis, pursuant to the plea agreement, reserved the right to present argument against the application of a guideline adjustment under the "sophisticated means" provisions detailed in U.S.S.G. § 2B1.1(b)(10)(C). After careful review of the provisions and established case law in

1

the Fourth Circuit, it is clear that accord to legal precedent that the Courts have viewed Mr. Davis' conduct as sufficient to warrant the application of the increase. The application and interpretation of what is sophisticated is broad and far reaching. Over the past decade there have been several advancements in technology which make actions far less "sophisticated" then in previous times. Common technology makes it much easier to create or alter documents using common place applications such as adobe.

In addition, this principal is also true as it pertains to the creation of business. All states encourage business ownership and have actively sought to remove hurdles that deter or slow down the process of starting business. Many state corporation commissions allow for applications and supporting documentation to be submitted on line. Filing fees can be paid via online credit card processing and business operating documents can be submitted within minutes. The actions which required sophistication in the past, simply aren't that difficult anymore.

While it is understood that the application may be properly applied, Mr. Davis requests that this court consider this information as it contemplates what would be an appropriate sentence.

## II. APPLICATION OF U.S.C. §3553(a) FACTORS

In United States v. Booker the Supreme Court ruled that its Sixth Amendment holdings in Blakely v. Washington, 124 S.Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 455 (2000) applied to the Federal Sentencing Guidelines. United States v. Booker, 125 S.Ct. 738, 756 (2005). The Court further held that the provisions of the Federal Sentencing Reform Act of 1984 that make the Guidelines mandatory or which rely upon the Guidelines' mandatory nature, were incompatible with its Sixth Amendment holding. Booker, 125 S.Ct. at 756. As a result, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." 125 S.Ct. at 757.

Primarily due to the Supreme Court's recent sentencing pronouncements in Gall v. United States, 128 S.Ct. 586 (2007) and Kimbrough v. United States, 128 S.Ct. 558 (2007), the sentencing options available to district court judges have "significantly broadened." United States v. Moon, 513 F.3d 527, 544 (6th Cir. 2008), quoting Gall, 128 S.Ct. at 602. District courts are now free from any requirement to mechanically adhere to the strict structures of the guidelines, nor are courts required to even presume that the guidelines provide an appropriate sentence in a given case.

Recognizing that the guidelines are simply the "starting point" in a sentencing analysis, district courts must delve deeper and make an "individualized assessment based on the facts presented." Gall, 128 S.Ct. at 597. In making an individualized assessment, the district court is required to consider all the factors outlined in 18 U.S.C.A. §3553(a) and is permitted to tailor the sentence in light of other statutory concerns. Kimbrough, 128 S.Ct. at 570. A district court may reasonably determine that a within guidelines sentence does not serve the objectives of sentencing, even if that determination ultimately rests on a disagreement with the guidelines. Kimbrough, 128 S.Ct. at 564. See United States v. Pugh, 515 F.3d 1179, 1190-91 (11th Cir. 2008).

In the final analysis, the goal of performing an individualized sentencing assessment is to arrive at a just sentence, one "sufficient, but not greater than necessary," 18 U.S.C.A. §3553(a), to serve the purposes of sentencing set forth in §3553(a)(2). United States v. McBride, 511 F.3d 1293, 1297 (11th Cir. 2007). The sentencing court is "free to conclude that the applicable guideline range gives too much or too little weight to one or more factors, either as applied in a particular case or as a matter of policy." United States v. Campos-Maldanado, 531 F.3d. 337 (5th Cir. 2008).

A district court must give respectful consideration of the guidelines in determining a sufficient sentence, Gall, 128 S.Ct. at 594, but it may not presume that the guideline sentence is the correct one. Rita v. United States, 127 U.S. 2456, 2465 (2007). The court is free to consider whether the guideline sentence itself "fails to properly reflect §3553(a) considerations" in the case at hand, Rita, 127 S.Ct. at 2465, and/or whether the guidelines at issue exemplifies the Sentencing Commission's "exercise of its characteristic institutional role." Kimbrough, 128 S.Ct. at 575.

As the guidelines are now advisory, this Court is not constrained from imposing an individualized sentence that does not exceed the statutory ceiling.

In Kimbrough v. United States, 128 S. Ct. 558 (2007), the Supreme Court held that the Sentencing Guidelines are simply an advisory tool to be considered alongside other statutory factors detailed in 18 U.S.C. §3553(a). Courts must consider the recommended guideline range as one of seven co-equal statutory sentencing factors referenced in 18 U.S.C. §3553(a). *United States v. Booker*, 543 U.S. 220, 259-60 (2005). The factors to be considered are: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide for just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a). After considering these factors, the Court has discretion to differ with the U.S.S.G.'s custody range, See Rita v. United States, 127 S. Ct. 2456 (2007). Furthermore, the sentencing courts must impose the minimum sentence that is

4

sufficient to accomplish the objectives of §3553(a). A sentence of no more than twenty-four (24) months is appropriate following a consideration of the 3553(a) factors.

### A. The Nature and Circumstances of the Offense

Mr. Davis has pled guilty to the federal offense of committing wire fraud. Mr. Davis' illegal conduct included the submission of loan applications under The Cares Act, which contained false statements and incorporated manufactured documents. Mr. Davis applied for the fraudulent loans using a shell corporation called Bright Vanguard that he created. His fraud scheme spanned less than one year. The fraudulent applications resulted in the payout of several loans for an extensive amount of money. The false documents included tax returns, client ledgers, employee records, and payroll documentation. The false statements included the failure to disclose a plea to a felony in Texas in 2017.

Mr. Davis is also taking responsibilities for his actions that involved the submission of fraudulent computer equipment loans. Mr. Davis and others agreed to submit applications for loans which were supported by manufactured invoices for computer equipment. The applications claimed that the loan proceeds would be used to said invoices. The loans were approved based largely on the belief that the computer equipment would be collateral. Mr. Davis assisted with facilitating the loans by finding the appropriate lender and creating the invoices. In return, Mr. Davis received a percentage of the tendered loan. In several cases, the companies would continue to pay the loan notes as they became due. Despite their efforts, the Covid pandemic caused many of the companies to default on the loans. After the default, the lending institutions were unable to locate the alleged collateral that the companies claimed to be purchasing.

### B. The History and Characteristics of the Defendant

    Mr. Davis is fifty (50) years old and currently lives in Los Angeles California. Mr. Davis was born from the marital union of his parents Roger Davis and Cheryl Deakder. The two remained married for forty (40) years. Mr. Davis grew up in a loving home with his younger sister Melissa. Mr. Davis recalls a positive family life but notes that his father and grandfather both suffered from hereditary mental health illnesses. At times the illness would cause his father to become verbally abusive and overbearing. Roger Davis was a very successful man and was strict about his children also ascertaining the same level of success. Despite this, Mr. Davis recognizes that he had a good childhood with overall positive experiences. He values the opportunity to travel and cultural experiences he obtained during his childhood. He is also grateful that his parents were present and supportive of him. He maintains contact with both his parents and sister. Mr. Davis also recalls that due to familial expectations, he always felt pressure to obtain the same level of success as his father. This expectation resulted in Mr. Davis obtaining his first job at the age of thirteen (13) at a neighborhood retail store. Mr. Davis, even as a child, worked hard to prove that he could also be successful and independent.

    Mr. Davis was very active during his school aged years. He maintained a thriving social life and was an accomplished athlete. He played football and basketball throughout high school and entered college when he was only seventeen years old. He initially attended Tulane University but left due to struggles. He enrolled in Broward Community College and was accepted into Florida International University. Mr. Davis' struggles with collegiate academics continued and were mostly rooted in his attempts to balance a desire to generate income with the need to focus on his studies. Mr. Davis eventually withdrew from school and subsequently began working at a car dealership. Mr. Davis started in the sales department and quickly proved his value to the company. Over the next several years, Mr. Davis continued to hone his skills as a salesman and

manger at car dealerships. He was well respected and subsequently became general manager of a dealership at the young age of twenty-four (24). He continued to work in this industry for over fifteen (15) years.

Mr. Davis was previously married to Naibeth Davis. The two met in Florida and developed a strong connection. Mr. Davis was committed to Naibeth and her two children. He made this love and commitment evident when he made the decision to adopt her children from a previous marriage. Mr. Davis and Naibeth also had one more child. There youngest daughter is currently eleven (11) years old. The older two are now adults but maintain frequent contact with Mr. Davis. Mr. Davis' children are the most important part of his life, and he has always maintained a strong relationship with each of them. He was actively supportive of both of his older children as they dealt with substance abuse issues as young adults. He was empathetic to their struggles, because he had also experienced addiction as a young adult. His children believe the support and life experiences he was able to share were a factor in helping them achieve sobriety.

Throughout the years, Mr. Davis and the children have enjoyed hiking, family gatherings, concerts, beach days, zoo trips, and sporting activities. He currently sees his youngest child weekly on Sunday, Wednesday, and Saturday at a minimum. He is currently helping her design a website.

Mr. Davis has spent much of the past year reflecting on past decisions and the future direction of his life. He is seeking to uncover the true motives for his bad decisions, so that he will never make these mistakes again. Mr. Davis is currently in discussions with counselors and discussing his past mistakes and current predicament. Mr. Davis speaks with his father on a weekly basis and discusses unresolved issues with him as well.

Mr. Davis' goal is to live a life that his children would be proud of. He understands that his intense fear of failure can be just as harmful as actually failing at something. He plans to live a life as a productive, and law-abiding citizen. He is intent on avoiding negative connections and past relationships that he developed while participating in fraud.

C.  **The Need for the Sentence to Reflect the Basic Aims of Sentencing: "just punishment," deterrence, and rehabilitation**

Mr. Davis is currently fifty (50) years old. He is one of many defendants that have been arrested, prosecuted, and convicted of wire fraud in respect to the Cares Act programs. The district has sentenced dozens of defendants for their actions that were similar to Mr. Davis'. A survey of some of the defendants is as follows:

| DEFENDANT | LOSS AMOUNT | ADVISORY GUIDELINE RANGE | SENTENCE |
|---|---|---|---|
| Quin Rudin | 100,000,000 | 151-188 months | 120 months |
| Thanh Rudin | 100,000,000 | 78-97 months | 34 months |
| Seir Havana | 100,000,000 | 78-97 months | 42 months |
| Clayton Rosenberg | 9,300,000 | 63-78 months | 63 months |
| Jenna Mitchum | 5,800,000 | 51-63 months | 48 months |
| Malik Mitchum | 5,800,000 | 51-63 months | 51 months |

The majority of defendants receive sentences short of the recommended guideline range, and certainly less than the ninety-seven (97) months of incarceration that the Government has requested in their filing.

John Michael Felts is an individual who was closely tied to Mr. Davis. The two were once friends. Mr. Felts was also involved in a fraud scheme that targeted the Cares Act

programs. Mr. Felt's actions resulted in an intended loss amount of close to $14,000,000. The actual lose amount was $8,173,736. Mr. Felts used the proceeds of his fraud to live a luxurious lifestyle. He purchased six (6) vehicles, an upscale yacht, rare sports memorabilia, Rolex watches, and other expensive jewelry. He was convicted of wire fraud and sentenced by the U.S. District Court for the Western District of Missouri on December 17, 2024. The court sentenced him to twenty-four (24) months of incarceration. It would be not be just for Mr. Davis to receive a sentence that is more than six (6) years longer than John Felts.

     Mr. Davis has never served any time in a correctional institute. He has spent most of his life either in school, working in various fields, and as a supportive father. He has been dealing with the sobering reality that his actions will result in this Court sentencing him to serve some period of incarceration. In reality, it does not take extensive jail to for an individual in Mr. Davis' position to be deterred from future criminal conduct. Mr. Davis realizes that he will lose irreplaceable time with family and loved ones. He understands that his actions were selfish, and the consequences will affect his family as well.

     Mr. Davis is remorseful for his actions, and understands how his fraudulent conduct effects this country, financial institutions, and every day citizens. Mr. Davis is fully committed to following through with the payment of as much restitution as he can. He has plans to resume employment after release and will follow through with his responsibilities under the restitution order.

     A sentence of twenty-four (24) months is sufficient to meet the aims of sentencing in this matter and avoids any unwarranted disparity for Mr. Davis' actions.

     **<u>CONCLUSION</u>**

For the reasons stated above, Mr. Davis requests that this court sentence him to a period of no more than twenty-four (24) months of incarceration, with credit for any time served. In addition, Mr. Davis request that he be recommended for participation in the RDAP program, and that he be allowed to serve his sentence at a Bureau in Prison as close Los Angeles, California as possible. It is Mr. Davis' position that this sentence is sufficient to accomplish the objectives of sentencing as detailed in 18 U.S.C. §3553(a).

                                              Respectfully Submitted,
                                              CRAIG DAVIS
                                              By Counsel

By:_____/s/_____
  Jonathan A. Simms (VSB 75663)
  The Simms Firm, PLC
  11325 Random Hills Road
  Suite 360
  Fairfax, Virginia 22030
  Ph (703) 383-0636
  (703) 225-3333
  jsimms@simmsfirm.com

**<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that on January 10, 2025, I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Kathleen E. Robeson
Assistant United States Attorney
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: 703-299-3700

10

Email: kathleen.robeson@usdoj.gov

David A. Peters
Trial Attorney
Criminal Division
Fraud Section, Department of Justice
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: 703-299-3700

                                                By:_____/s/_____
                                                Jonathan A. Simms (VSB 75663)
                                                The Simms Firm, PLC
                                                11325 Random Hills Road
                                                Suite 360
                                                Fairfax, Virginia 22030
                                                Ph (703) 383-0636
                                                (703) 225-3333
                                                jsimms@simmsfirm.com